IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK OROZCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) |
| BRUNSWICK CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Frank Orozco ("Plaintiff" or "Orozco"), by his counsel, for his Complaint against Brunswick Corporation ("Brunswick" or "Defendant"), alleges as follows:

### INTRODUCTION

1. Frank Orozco was hired by a division of Defendant Brunswick, Freedom Boat Club, in April of 2022 to serve in a managerial position overseeing two boat technicians. After accepting the position, Orozco was instead required to perform the work of the two boat technicians who were never hired by Defendant. Orozco spent over 90% of his workday performing manual work, never managing any staff as they were never hired, and on some occasions handling administrative tasks. He worked late nights and weekends throughout the year to meet the demands of these roles.

2. After two years in which he worked thousands and thousands of overtime hours with no overtime compensation, Defendant abruptly terminated Orozco's employment, claiming it was making changes. It then posted a position for a technician to work out of Orozco's work location. Defendant then refused to pay Orozco for his overtime hours.

1

3. Orozco is bringing claims for overtime compensation under the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

## PARTIES

4. At all relevant times Plaintiff Frank Orozco was employed by Defendant Brunswick Corporation. He is a citizen of Illinois.

5. Defendant Brunswick Corporation is a corporation headquartered in Illinois and is a citizen of Illinois.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over the federal questions arising under the Fair Labor Standards Act pursuant to 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Orozco's state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the Fair Labor Standards Act claims that they form part of the same case or controversy.

## RELEVANT FACTS

8. Brunswick Corporation ("Brunswick"), an Illinois corporation, operates a division called the Freedom Boat Club (also referred to herein as "Club"), which, according to Brunswick, is the "ultimate boat club" and the first and largest boat club in the world with over 35 years of experience.

9. The Freedom Boat Club offers "concierge-level support" taking care of "anything – including maintenance, cleaning, insurance and storage." https://www.freedomboatclub.com/. It also offers "unlimited, free training" to its members. Id. The Club promises its members that a "certified captain" will show members the waterways if they choose to boat in a new location. Id. The Freedom Boat Club operates under Defendant's promise to its customers that it is "powered"

by the belief that "Next Never Rests." https://www. brunswick.com/investors/news-events/press-releases/detail/755/freedom-boat-club-elevates-the-member-experience-with-the.

10. In March of 2022, Plaintiff Frank Orozco was recommended for a position as Manager of Fleet Operations, operating out of the Compass Martine Services Location in Park City, Illinois by Percy Owca. Owca is the owner of Compass Marine Services, LLC, a maintenance shop that Freedom Boat Club uses as maintenance support.

11. Orozco applied for a position through a LinkedIn posting. In addition to the posting for the Manager of Fleet Operations position, Freedom Boat Club was at that time also posting a position for a technician working out of the same location. The technician position included responsibilities for maintenance, transporting, and storage of the boats used by the Club's members.

12. After applying for the Manager of Fleet Operations position, Orozco was interviewed by Dan Zarzynski, Territory Manager for Freedom Boat Club. During the interview Zarzynski told Orozco that in the Manager of Fleet Operations position Orozco would be responsible for overseeing the marine operations but that Freedom Boat Club would be hiring technicians to do the manual work involving approximately 110 boats that were operating out of that location. That was consistent with the job description for the Manager of Fleet Operations position which included "Manage MOC staff members and ensure all HR needs are being addressed."

13. Orozco was offered the Manager of Fleet Operations position and accepted. He began employment on April 10, 2022.

14. Upon starting the position Orozco quickly learned that of the approximately 110 boats he was responsible for he had inherited a significant backlog of boats needing repairs and maintenance due to the previous understaffing of his work location.

15. In addition, boats were frequently damaged due to the Club's dock staff lacking the necessary training to effectively guide boats through the docking process.

16. Despite promising Orozco a managerial position overseeing technicians, from the first day Orozco was used primarily in the technician role. His responsibilities were almost exclusively manual or non-managerial tasks such as, detailed maintenance services on boats, diagnostic and repair work on boats, inventory management, coordinating boat deliveries, transporting boats between harbors, unloading boat deliveries and placing boats on stands at season's end, delivering essential supplies to Chicago harbors, such as replacement anchors and life jackets as needed, informing management of the readiness of boats for water deployment, providing basic guidance about boating to Club members, boat hauling at the beginning and end of the boating season, delivering boats to Club members, and trailering boats.

17. Orozco was never given a set work schedule but was required to appear at work when Compass Marine opened at 5:00 a.m. to coordinate boat movements, as Freedom Boat Club had no equipment to move boats within the yard, only a truck. He also had to be present when new boats arrived.

18. On top of filling the two technician positions on a full-time-plus basis, Orozco was also expected to perform some administrative responsibilities which, though adding to his work hours, constituted a small percentage of his workday in light of the tremendous demands of the technician work he was required to perform. He never managed any staff which he expected would occupy most of his time in the Manager of Fleet Operations position.

19. Orozco's work in the two technician positions required Orozco to work weekends and evenings during the busy season, which lasted approximately 11 months (e.g., preparing boats pre-season, assisting with Club members during the season, and preparing boats post-season for storage).

20. From January through March Orozco spent his days focusing on repairs and maintenance and training at Mercury Marine Tech School, resulting in Orozco working 8-hour days Monday through Saturday.

21. From March through April Orozco's time was spent in intensive preparation for the peak season, assisting Compass Marine to move boats off blocks and onto trailers, completing maintenance, preparing boats for launch, and delivering boats to Chicago, Fox Lake, and occasionally helping Wisconsin due to staffing shortages. A typical work week during this period would be 17 hours per day Monday through Saturday, and four hours on Sundays.

22. From May through August (Peak Season) Orozco's time would be spent completing maintenance, trailering boats back to the shop for repairs or conducting repairs on the water. His workdays were 17 hours Monday through Saturday and four hours on Sunday in addition to on-call for emergencies.

23. From September through November Orozco would conduct 100 to 300 hours of maintenance services, removing boats from trailers, and placing them on blocks, with occasional trips to pick up boats from Chicago, Fox Lake, and assisting Wisconsin with transporting boats to the MOC for service. Orozco's work hours during this period were 17 hours a day Monday through Saturday and four hours on Sunday.

24. Orozco would then vacation the entire month of December returning to start up again on January 7.

25. Orozco was never paid overtime for the thousands of overtime hours he worked.

26. Because of Defendant's promises that service would be at a "concierge" level, and that "Next Never Rests", Orozco worked under short turnaround expectations which added to the pressure to work evenings and weekends to keep Club members—who had high expectations due to the promises of Defendant—satisfied.

27. Despite promising Orozco it would hire two technicians to perform the manual and non-managerial work, Defendant never did so, instead using Orozco to fill the position of two technicians, and also using him to step in to assist others working for Defendant who were also understaffed performing other manual work.

28. Defendant was aware of the demands on Orozco as Orozco often communicated with management about the work he was performing in the evenings and weekends, and they had access to the work orders that Orozco was handling. Defendant was also aware that no technician had ever been hired to report to Orozco and perform the technician work though at the time of Orozco's hiring Defendant recognized that two technicians were required.

29. One manager, Max Curtis, noting all the work Orozco performed, called him a "one-man" show. In 2022 Defendant even awarded Orozco the "Marine Tech of the Midwest" award. On another occasion, Scott Ward, Vice President with the Freedom Boat Club, flew down from Florida to meet with Orozco to discuss Orozco's challenges, which Orozco shared with Ward. Rather than pay Orozco the compensation he was due under federal and state law for his overtime work, or even hire the two technicians at that time, Ward instead offered Orozco a token bonus.

30. Defendant made no effort to ensure that Orozco's work hours were recorded and did not record his work hours.

31. On June 19, 2024, after Orozco had completed the pre-season and most of the peak season work, he was called to a meeting by his then-manager Curtis and Human Resources representative Melissa Lipin. When he arrived his employment was abruptly terminated and was told Defendant was making changes to his position and he was no longer going to be needed. When Orozco asked who would be doing all the service work he had been doing, he was just told that they were going to be making changes.

32. Immediately after Orozco's termination Defendant posted an opening for a technician to work at Orozco's previous work location.

## COUNT I
### Violation of the Illinois Minimum Wage Law – Overtime Wages
### 820 ILCS 105/1 *et seq.*

33. Plaintiff Frank Orozco hereby realleges and incorporates paragraphs 1 through 32 as paragraph 33 of this Complaint.

34. Pursuant to 820 ILCS 105/4a(1), Defendant was required to pay non-exempt employees one and one-half times the regular rate for all hours worked in excess of forty (40) hours per week.

35. During the course of his employment with Defendant, Plaintiff was not exempt from the overtime wage provisions of the Illinois Minimum Wage Law.

36. Though hired into an exempt position, from the beginning of his employment more than 90% of the work Orozco performed was manual labor which included traveling to and from work locations where he performed maintenance work on boats and other manual tasks.

37. During his employment, Orozco frequently worked overtime. Based on his recollection he estimates that he worked more than 5,500 hours of overtime for which he was not paid. These overtime hours he worked were in excess of 250 overtime hours per month during the

7

busiest months as he was filling the role of two maintenance positions which Defendant never filled and an administrative position.

38. Defendant was aware that Orozco was not provided with the staff he was promised at the time he was hired and that he was filling all three positions requiring him to frequently work overtime. Defendant failed to keep records of Orozco's work hours and failed to pay Orozco overtime pay.

39. Defendant has refused to pay Orozco for his overtime work, including time worked in excess of forty (40) hours a week.

40. Defendant violated the Illinois Minimum Wage Law by refusing to compensate Plaintiff at one and one-half times his regular hourly rate of pay for all hours worked in excess of forty (40) hours per week.

41. Pursuant to 820 ILCS 105/12(a), Plaintiff is entitled to recover three times the unpaid wages, plus prejudgment interest in the amount of five percent (5%) for each month following the date of payment during which such underpayments remain unpaid plus attorney's fees and costs.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

A. A judgment in the amount of three times (treble) as much as one and one-half times his regular rate of pay for all hours in which Plaintiff worked in excess of forty (40) hours in individual work weeks;

B. Prejudgment interest pursuant to the formula set forth in 820 ILCS 105/12(a);

C. Reasonable attorneys' fees and costs incurred in filing this action; and

D. Such other and further relief as this Court deems appropriate and just.

## COUNT II
### Violation of the Fair Labor Standards Act – Overtime Wages
### 29 U.S.C. § 201, *et seq.*

42. Plaintiff Frank Orozco hereby realleges and incorporates paragraphs 1 through 41 as paragraph 42 of this Complaint.

43. Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., Defendant was required to pay non-exempt employees one and one-half times the regular rate for all hours worked in excess of forty (40) hours per week.

44. During the course of his employment with Defendant, Orozco was not exempt from the overtime wage provisions of the Fair Labor Standards Act, 29 U.S.C. § 207.

45. Though hired into an exempt position, from the beginning of his employment more than 90% of the work Plaintiff performed was manual labor, which included traveling to and from work locations where he performed maintenance work on boats and other manual tasks.

46. During his employment, Orozco frequently worked overtime. Based on his recollection he estimates that he worked more than 5,500 hours of overtime for which he was not paid. These overtime hours Plaintiff worked were in excess of 250 overtime hours per month during the busiest months as he was filling the role of two maintenance positions which Defendant never filled and an administrative position.

47. Defendant was aware that Orozco was not provided with the staff he was promised at the time he was hired and that he was filling all three positions requiring him to frequently work overtime. Defendant failed to keep records of Orozco's work hours and failed to pay Orozco overtime pay.

48. Defendant has refused to pay Orozco for his overtime work, including time worked in excess of forty (40) hours a week.

9

49. Defendant violated the Fair Labor Standards Act by refusing to compensate Orozco at one and one-half times his regular hourly rate of pay for all hours worked in excess of forty (40) hours per week.

50. Defendant willfully violated the Fair Labor Standards Act by refusing to pay Plaintiff for time he worked in excess of forty (40) hours in one or more individual work weeks.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

A. A judgment in the amount of one and one-half times Plaintiff's regular rate of pay for all hours which Plaintiff worked in excess of forty (40) hours in individual workweeks;

B. Liquidated damages in an amount equal to the amount of unpaid overtime compensation found due;

C. Reasonable attorneys' fees and costs incurred in filing this action; and

D. Such other and further relief as this Court deems appropriate and just.

### COUNT III
### Violation of the Fair Labor Standards Act – Recordkeeping
### 29 U.S.C. § 211(c)

51. Plaintiff Frank Orozco hereby realleges and incorporates paragraphs 1 through 50 as paragraph 51 of this Complaint.

52. Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201(c) Defendant was required to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."

53. Defendant failed to comply with the requirements of 29 U.S.C. § 201(c).

54. At all material times, the acts and conduct of Defendant complained of in paragraphs 1 through 52 have been willful.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

A. A judgment in the amount of one and one-half times Plaintiff's regular rate of pay for all hours which Plaintiff worked in excess of forty (40) hours in individual workweeks;

B. Liquidated damages in an amount equal to the amount of unpaid overtime compensation found due;

C. Reasonable attorneys' fees and costs incurred in filing this action; and

D. Such other and further relief as this Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**Dated**: February 21, 2025

**FRANK OROZCO**

/s/ *Ruth I. Major*
One of His Attorneys

Riccardo A. DiMonte (ARDC No. 6191706)
Jeiel Noh (ARDC No. 6336456)
Robbins DiMonte, Ltd.
216 West Higgins Road
Park Ridge, IL 60068

Ruth I. Major (ARDC No. 6205049)
The Law Offices of Ruth I. Major, P.C.
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Phone: (312) 893-7544